UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MEGAN NORDYKE, et al., | § | |
| *Plaintiffs*, | § § § | |
| v. | § § | Civil Action No. 3:22-CV-1183-X |
| CITY OF DALLAS, et al., | § § § | |
| *Defendants*. | § § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Dallas County's (the "County") motion to dismiss. (Doc. 60). Having reviewed the motion, the applicable law, and Plaintiffs Megan Nordyke and Lilianna Godinez's second amended complaint, the Court concludes that they failed to plausibly allege their claims. Therefore, the Court **GRANTS** the County's motion to dismiss (Doc. 60) and **DISMISSES WITH PREJUDICE** this action.

**I. Background**

Plaintiffs bring claims under 42 U.S.C. § 1983 arising from alleged deprivations of their constitutional rights during a protest following George Floyd's death. On May 30, 2020, Megan Nordyke attended protests throughout Dallas as a legal observer to ensure that various governmental entities did not infringe the protestors' rights and partook in the protests herself.[1] She wielded a sign that read

---

[1] Doc. 56-1 at 4–5.

1

on one side, "I am not the only LAWYER here" and, on the other, "The eyes of JUSTICE are watching."[2]

As she marched through the streets of Dallas, flashing her sign at various Dallas Police Department ("DPD") officers, she noticed that a large DPD van had begun to make its way into the middle of the protestors.[3] Nordyke alleges that this movement by the DPD was an intentional action to provoke an encounter that could serve as a pretext for arrests.[4] As Nordyke continued to protest next to the DPD officers who exited the police van, the officers began to use riot shields to push back the protestors and began to fire pepper bullets into the crowd and at Nordyke's feet.[5] After retreating to the city hall, Nordyke took a seat on the steps, and, after some time, a DPD officer arrested her for allegedly refusing to get out of the way.[6] Around this time, DPD officers also arrested Godinez, allegedly without probable cause.[7]

After both were placed in a paddy wagon, Nordyke and Godinez allege that they began to accrue major injuries as they were denied basic human needs while sitting in a hot, dark, and cramped paddy wagon without any precautions to protect them from transmission of COVID-19.[8] Plaintiffs allege that they suffered

---

[2] *Id.*

[3] *Id.* at 5.

[4] *Id.*

[5] *Id.* at 6.

[6] *Id.* at 6–7.

[7] *Id.* at 7.

[8] *Id.* at 7–8.

dehydration after being denied water by the officers.[9] Later at the Dallas County Jail, Plaintiffs allege that the officers continued to deprive them of their basic human needs and ridiculed them for asking for help.[10]

Plaintiffs initially brought six causes of action against the City of Dallas, the Dallas County Sheriff's Office, and Dallas County.[11] All three defendants moved to dismiss the Plaintiffs' claims against them.[12] The Court granted the motion to dismiss but allowed the plaintiffs to file a second amended complaint as to the County only.[13]

Plaintiffs filed a second amended complaint against the County alleging that it violated Plaintiffs' Fourteenth Amendment rights to substantive due process by (1) denying them basic human needs through their conditions of confinement, and (2) failing to discipline the jail personnel.[14] The County moved to dismiss the Plaintiffs' second amended complaint for failure to state a claim.[15] The motion is ripe for this Court's consideration.

---

[9] *Id.* at 8.

[10] *Id.* at 9.

[11] Doc. 1.

[12] Docs. 19, 20.

[13] Doc. 36.

[14] Doc. 56-1.

[15] Doc. 60.

...

## II. Legal Standard

Federal Rule of Civil Procedure 8 requires a pleading to state "a short and plain statement of the claim showing that the pleader is entitled to relief."[16] The pleading standard does not require detailed factual allegations, but "[t]hreadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice."[17] For a complaint to survive a motion to dismiss under Rule 12(b)(6), it "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[18] A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.[19] For purposes of a motion to dismiss, courts must accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff.[20] "In other words, a motion to dismiss an action for failure to state a

---

[16] Fed. R. Civ. P. 8(a)(2).

[17] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[18] *Id.* (cleaned up).

[19] *Id.*

[20] *Muhammad v. Dallas Cnty. Cmty. Supervision & Corrs. Dep't.*, 479 F.3d 377, 379 (5th Cir. 2007).

claim admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts."[21]

### III. Analysis

The County moves to dismiss both of the Plaintiffs' claims. The Court addresses each in turn.

### A. Conditions of Confinement

In its prior order, the Court explained that the Plaintiffs failed to plead sufficient facts to demonstrate that the officers' actions constitute a policy or custom of the County.[22] It informed the Plaintiffs that they needed to plead specific facts relating to an identifiable policy or customary practice of the County that was constitutionally defective.[23] The Court gave the Plaintiffs an opportunity to cure the deficiencies, but their second amended complaint still fails to plausibly allege a constitutionally defective policy or practice.[24]

Constitutional challenges by pretrial detainees may be brought as an attack on a condition of confinement.[25] To prove an unconstitutional condition of confinement, a plaintiff must prove: (1) a rule or restriction or the existence of an identifiable intended condition or practice, (2) which was not reasonably related to a legitimate governmental objective, and (3) which caused the violation of the

---

[21] *Ramming v. U.S.*, 281 F.3d 158, 161–62 (5th Cir. 2001).

[22] Doc. 36 at 9.

[23] *Id.* at 11.

[24] *Id.* at 15; Doc. 56-1.

[25] *Duvall v. Dallas Cnty., Tex.*, 631 F.3d 203, 206 (5th Cir. 2011).

detainee's constitutional rights.[26]  Regarding the first element, "[a] condition is usually the manifestation of an explicit policy or restriction," but in some cases, it "may reflect an unstated or *de facto* policy, as evidenced by a pattern of acts or omissions sufficiently extended or pervasive . . . to prove an intended condition or practice."[27]  Put differently, even though a government may not expressly subject detainees to inhumane conditions of confinement, its intent to do so may be presumed when it incarcerates detainees in the face of such known conditions and practices.[28]  But "[p]roving a pattern is a heavy burden, one that has rarely been met in our caselaw."[29]

The Plaintiffs' second amended complaint fails to provide factual allegations sufficient for the Court to infer that the County has a *de facto* policy to deny pretrial detainees basic human needs.  In support of their allegations, the Plaintiffs contend that they, along with other protestors detained with them, were denied clean water, given inedible food, denied medical care, and unreasonably exposed to COVID-19.[30]

---

[26] *Estate of Henson v. Wichita Cnty., Tex.*, 795 F.3d 456, 468 (5th Cir. 2015) (cleaned up).

[27] *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 452 (5th Cir. 2009) (cleaned up).

[28] *Duvall*, 631 F.3d at 207.

[29] *Shepherd*, 591 F.3d at 452.

[30] Doc. 56-1 at 9–11.

But the County contends that the alleged unlawful conditions are not actionable conditions-of-confinement claims.[31]

A pervasive pattern of serious deficiencies in providing for detainees' basic human needs might prove constitutional insufficiency.[32] But the acts or omissions have to be "serious, extensive[,] and extended."[33] Here, the conditions alleged by the Plaintiffs are not extensive or extended enough to constitute a pattern of serious deficiencies.[34] Importantly, the Plaintiffs allege that they were denied water and medical attention *on demand*, not that they were denied them for extended periods of time.[35] Likewise, the Plaintiffs admit that they were detained for around twenty-four hours, not extensively.[36] And importantly, although the Plaintiffs allege that they were denied medical attention and were unreasonably exposed to COVID-19, they do not allege that they had any serious medical conditions or that they actually contracted COVID-19 from the jail.[37]

Deprivations of basic human needs were serious and extensive enough to establish a *de facto* policy in cases like *Duvall* and *Shepherd*. In *Duvall*, the detainee contracted a serious infection in a jail that had a "bizarrely high incidence" of the infection, twenty times higher than comparable jails, that the municipality knew

---

[31] Doc. 60 at 19–23.

[32] *Id.* at 208.

[33] *Id.*

[34] *See* Doc. 56-1 at 9–13.

[35] *Id.*

[36] *Id.* at 11.

[37] *Id.* at 9–13.

7

about for at least three years prior to his detention.[38] And in *Shepherd*, the detainee suffered a stroke in jail after he was denied medical treatment for seven weeks even though the municipality knew that he had chronic hypertension and repeatedly denied him medicine.[39]

Here, the allegations simply do not rise to the level necessary to establish that the County had a *de facto* policy which caused a violation of the Plaintiffs' constitutional rights. Accordingly, this claim cannot survive a motion to dismiss.

### B. Failure to Discipline

Failure to discipline is not a common claim.[40] To establish a failure to discipline claim, Plaintiffs must show (1) the County failed to discipline its employees, (2) that failure amounted to deliberate indifference, and (3) the failure to discipline directly caused the constitutional violation in question.[41] Here, the Court cannot reasonably infer, based on the allegations in Plaintiffs' second amended complaint, that the County failed to discipline its employees which directly caused a constitutional violation.

At most, Plaintiffs allege that the County failed to discipline any of the officers working at the Dallas County Jail throughout the George Floyd protests who violated the constitutional rights of protestors.[42] But Plaintiffs cannot vaguely allege that the

---

[38] 631 F.3d at 208.

[39] *Shepherd*, 591 F.3d at 449–50.

[40] *Hunter v. City of Houston*, 564 F. Supp. 3d 517, 529 (S.D. Tex. 2021).

[41] *Deville v. Marcantel*, 567 F.3d 156, 171 (5th Cir. 2009).

[42] Doc. 56-1 at 16.

8

County has not disciplined officers for constitutional violations without some factual allegations that detail how the County failed to discipline officers.  For instance, Plaintiffs needed to allege which officers were involved, what constitutional violations they should have been disciplined for, and how that failure to discipline caused the misconduct at issue in the present case.[43]  There is simply not enough for the Court to draw reasonable inferences here.  Because the Plaintiffs failed to sufficiently allege that the County failed to discipline its employees for constitutional violations, the Court **DISMISSES** Plaintiffs' failure-to-discipline claim.

## IV. Conclusion

For the reasons explained above, the Court **GRANTS** the County's motion to dismiss and **DISMISSES WITH PREJUDICE** this case.

**IT IS SO ORDERED** this 15th day of May, 2024.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[43] *See Monacelli v. City of Dallas*, No. 3:21-CV-02649-L (BT), 2023 WL 6563410, at *9 (N.D. Tex. Sept. 1, 2023) (Rutherford, M.J.), report and recommendation adopted, No. 3:21-CV-2649-L, 2023 WL 6370753 (N.D. Tex. Sept. 29, 2023) (Lindsay, J.) (explaining that alleging only two prior instances of protests with similar constitutional violations failed to plausibly state a claim for failure to discipline or failure to train); *Jean v. City of Dallas, Tex.*, No. 3:18-CV-2862-M, 2019 WL 7195308, at *6 (N.D. Tex. Aug. 12, 2019) (Ramirez, M.J.), report and recommendation adopted, No. 3:18-CV-2862-M, 2019 WL 7187104 (N.D. Tex. Dec. 23, 2019) (Lynn, J.) (alleging three specific instances where officers were not disciplined for similar misconduct was insufficient).